UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
                                                                                                                        :

RANDOLPH EQUITIES, LLC, FAROUK ADAM
SHARIF, and TIERNEY SHARIF                  :

                Plaintiffs,                      :         05 Civ. 10889 (PAC)

    -against-                                       :         <u>ORDER</u>

CARBON CAPITAL, INC., BLACKROCK, INC.  :
And AFC REALTY CAPITAL INC.
                                                      :
               Defendants.
                                                        :
------------------------------------------------------------X

HONORABLE PAUL A. CROTTY, United States District Judge:

On December 30, 2005, Plaintiffs commenced this action alleging that Defendants breached their promise to provide a mezzanine mortgage loan in connection with Plaintiffs' contemplated acquisition and development of three apartment buildings in Florida. The Complaint, which was amended on March 1, 2006, includes claims for breach of contract, fraud, intentional interference with prospective business advantage, and estoppel. On April 4, 2006, Defendants moved to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. After an adjournment for settlement discussions, which were unsuccessful, the parties agreed to proceed. Oral argument was held on January 10, 2007. For the reasons set forth below, the Court grants AFC's motion to dismiss in its entirety, and denies Carbon Capital, Inc. and BlackRock, Inc.'s motions (with the exception of the fraud claim as to BlackRock).

1

**FACTS**

Plaintiff Randolph Equities, LLC ("Randolph") is a Chicago-based real estate development and investment firm whose principals are Plaintiff Adam Sharif and Tierney Sharif (together "Plaintiffs"). (Am. Compl. ¶¶ 12-13.) Defendant Carbon Capital, Inc. ("Carbon") is a New York-based private real estate debt fund. Defendant BlackRock, Inc. ("BlackRock") is a large, publicly traded investment management company that "manages Carbon." (Am. Compl. ¶ 15.) Defendant AFC Realty Capital, Inc. ("AFC") is a New York-based consulting firm that arranges debt and equity capital to real estate investors and developers. (Am. Compl. ¶ 17.)

Randolph was a partner of Treasures Holdco L.P. ("Treasures") (Am. Compl. ¶ 1.) In 1999, Treasures purchased three ten-story apartment buildings in Florida ("the Property"), (Am. Compl. ¶ 20) but the partners became engaged in a dispute which led to a petition in Illinois state court for dissolution of the partnership. (Am. Compl. ¶¶ 21-22.) The partners submitted competing bids, and the Illinois court approved Plaintiffs' offer to purchase the Property for $51 million. (Am. Compl. ¶¶ 23-26.)

In order to finance the purchase, Plaintiffs selected Ohio Savings Bank to provide the first mortgage of approximately $34.4 million and Carbon and BlackRock to provide a mezzanine loan[1] of $10.8 million. (Am. Compl. ¶ 27.) Plaintiffs allege that Carbon insisted that Plaintiffs retain Carbon's asset manager, AFC, for the deal, despite

---

[1] "[M]ezzanine financing has become very popular in recent years. Mezzanine financing (or, perhaps more appropriately, mezzanine capital) fills the gap between the first mortgage financing, which usually has a loan-to-value ratio of forty to seventy-five percent, and the equity participation of the principals of the borrower, which is usually no more than ten percent of the cost of the project. Mezzanine financing commonly supplies financing of ten percent to fifty percent of the project's capital structure cost. This type of financing can take several forms. Most commonly, it involves extending credit to the partners or other equity holders of a borrower and taking a pledge of such parties' equity interests (including the right to distributions of income)." John C. Murray & Randall L. Scott, Title Insurance for Mezzanine Financing Transactions, Practicing Law Institute, 532 PLI 31, 33 (Oct. 2006).

Plaintiffs' protests. (Am. Compl. ¶ 28.) Plaintiffs also allege that they agreed to this arrangement only because Carbon and AFC falsely assured them that they had worked on many deals in the past, that they had a deal firmly in place to achieve judicial approval of the sale, and that Plaintiffs would not be responsible for any more fees than those called for in the Letter of Intent. (Am. Compl. ¶¶ 3-4, 30-31, 108.)

Carbon, AFC and Randolph executed a Letter of Intent on August 4, 2003 establishing that Carbon would provide a mezzanine loan to Randolph for "[t]he lesser of $10.82 million … or 86.5% of the budgeted project costs." (Am. Compl. ¶¶ 35-37.)

On August 18, 2003, the Illinois state court approved the sale of the Property to Randolph, but conditioned on the removal of all contingencies, other than survey, title, legal opinion and loan documentation, from the lender commitments. (Am. Compl. ¶ 45.) Plaintiffs allege that Defendants then agreed to waive all pre-closing conditions, except for survey, title, legal opinion and loan documentation. (Am. Compl. ¶ 48.)

On August 27, 2003, Plaintiffs and Carbon executed a Commitment Letter, which reflected the discussions between Carbon and Adam Sharif relating the loan. This Letter was revised on September 10, 2003 ("Second Commitment Letter") stating that the Letter would be terminated, if Randolph was not awarded the Property by September 10, 2003, but that Carbon could extend the agreement. (Am. Compl. ¶¶ 58-60.)

Plaintiffs allege that Defendants expressly waived the pre-closing conditions on numerous other occasions, including the September 10, 2003 letters, and during a court proceeding on September 13, 2003 concerning the sale of the Property.

(Am. Compl. ¶¶ 63-64, 67-71, 73-74, 101-03.)   When Defendants agreed to waive these conditions, they effectively modified the Second Commitment Letter and the Second Letter of Intent—the alleged contract.

Plaintiffs allege that shortly after the September 13, 2003 hearing, Carbon/BlackRock began to "undertake certain measures purposefully designed to negate their obligation to provide financing and prevent the parties from closing the loan." (Am. Compl. ¶¶ 79-86.)  For example, Defendants insisted on substantially higher asset management fees and expenses to AFC than had been set forth in the Letter of Intent (Am. Compl. ¶ 75); and Defendants demanded "additional and extraneous information from Plaintiffs."  (Am. Compl. ¶¶ 79-86.)  Allegedly, Carbon/BlackRock and AFC were experiencing internal problems concerning the financing of the acquisition and consequently Defendants wanted out of the deal.  (Am. Compl. ¶¶ 10, 86.)

On October 9, 2003, Plaintiffs allege that all pre-closing conditions, except for "housekeeping matters" were met five days in advance of the judicially ordered October 14, 2003 closing date.  (Am. Compl. ¶¶ 8-10, 81, 84, 101-04.)  The same day, Defendants informed Plaintiffs that they would not be proceeding with the deal. (Am. Compl. ¶¶ 88-90, 101, 105.)  Plaintiffs allege that as a result of "Defendant's breach," the closing did not take place and Plaintiffs were unable to acquire the Property, resulting in their injury. (Am. Compl. ¶¶ 93-100.)

## DISCUSSION

*Rule 12(b)(6) Standard*

The district court may dismiss a claim under Federal Rule of Civil Procedure 12(b)(6) only if "it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations."  H.J. Inc. v. Nw. Bell Tel. Co., 492 U.S. 229, 249-50 (1989) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)).  The Court must accept as true all well-pleaded factual allegations in the complaint, and view them in the light most favorable to the plaintiff.  See De Jesus v. Sears, Roebuck & Co., 87 F.3d 65, 70 (2d Cir. 1996).  Despite the Rule's liberal standard, "conclusory allegations or legal conclusions masquerading as factual conclusions" are not sufficient to withstand a motion to dismiss.  Id.

The Court's consideration is normally limited to facts alleged in the complaint, documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.  See Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir. 1991).

**I.	Breach of Contract**[2]

To establish breach of contract claim under New York law, a plaintiff must plead: 1) the existence of a contract; 2) breach by the other party; and 3) damage suffered as a result of the breach.  See Terwilliger v. Terwilliger, 206 F.3d 240, 245-46 (2d Cir. 2000).

---

[2] On March 30, 2006, Plaintiffs withdrew the Breach of Contract claim as to Defendant BlackRock.  All remaining claims in the Amended Complaint are brought against all Defendants.

### *As to Carbon Capital*

Plaintiffs allege that the Second Commitment Letter and the Second Letter of Intent constitute a valid and enforceable contract with Carbon pursuant to which Carbon had an obligation to provide Plaintiffs with financing for the project. Carbon's termination of the Second Commitment Letter on October 9, 2003 constituted a breach. Carbon contends that this claim must fail for two reasons.

First, Article V(E) of the Second Commitment Letter, which incorporates by reference the "Exclusivity paragraph of the Letter of Intent," expressly allows Carbon the right to terminate the agreement any time prior to closing, and contains a strict no-oral-modification clause. Thus, the exercise of this right cannot form the basis of a breach of contract claim.

Plaintiffs contend, however, that Carbon modified the Second Commitment Letter to preclude it from terminating it before October 14, 2003. They point to a September 10, 2003 Letter and the Illinois state court order on October 1, 2003.

New York courts have held that, notwithstanding provisions requiring modifications to be in writing, contracts are deemed modified "if the evidence, taken as a whole, shows that the modification was authentic, or if the [allegedly modified] agreement was otherwise ratified by the parties' conduct." Janover v. Bernan Foods, Inc., 901 F. Supp. 695, 701 (S.D.N.Y. 1995). At this early stage of the pleadings, Plaintiffs' allegation that the parties' course of dealings modified the Second Commitment Letter, despite the no-oral modification clause, is sufficient. See Rosen Trust v. Rosen, 53 A.D.2d 342, 352 (4th Dept. 1976) (holding that "it is equally true that any written agreement, even one which provides that it cannot be modified except by a

6

writing signed by the parties, can be effectively modified by a course of actual performance"). Furthermore, a party's conduct, which causes the other party to believe that their contract was modified, can estop the party from invoking the statutory or contractual requirement of a writing. See Rose v. Spa Realty Assoc., 42 N.Y.2d 338 (1977).

Carbon's second argument is that Plaintiffs have failed to perform their obligations of the Second Commitment Letter because 1) Plaintiffs did not pay the commitment fee and 2) Plaintiffs did not provide satisfactory loan documentation. Consequently, the contract claim fails since "the complaint must contain some allegation that the plaintiffs actually performed their obligations under the contract." R.H. Damon & Co. v. Softkey Software Prods., Inc., 811 F. Supp. 986, 991 (S.D.N.Y. 1993).

As to the commitment fee, the Second Commitment Letter expressly obligated Randolph to pay Carbon a non-refundable commitment fee of $225,800 by September 15, 2003, and also contains a strict no-oral-modification clause. At this stage, however, Plaintiffs allegation is sufficient that this obligation was modified when "the parties subsequently agreed that…the commitment fee owed to Carbon would be paid out of the closing proceeds." (Am. Compl. ¶ 61.)

As to the satisfactory loan documentation, the Second Commitment Letter required Plaintiffs to provide Carbon with "satisfactory loan documentation for the acquisition of the Property" and further conditioned the loan on Carbon's "review and approval" of Plaintiff's loan documentation with its first mortgage lender (Ohio Savings Bank). (Am. Compl. ¶¶ 64, 70.) Defendants contend that this claim must fail because

7

the Amended Complaint does not allege that Carbon received these materials or could have received them by the October 14, 2003 closing.

Plaintiffs, however, have adequately alleged the performance of their obligations, including providing Carbon with will all information and documentation necessary to close on the Property.  Specifically, Plaintiffs contend that "between August 18, 2003 and September 12, 2003, Defendants provided Plaintiffs with oral written assurances that they would waive all pre-closing conditions…[and] repeatedly advised Plaintiffs that they would soon provide…existing loan documentation." (Am. Compl. ¶ 62.)  Defendants' contention that Rule 9(c) mandates Plaintiffs to plead with specificity the performance of each condition precedent is misguided.  Pursuant to Rule 9(c), "it is sufficient to aver generally that all conditions precedent have been performed or have occurred."  See also Ackerley Media Group, Inc. v. Sharp Elecs. Corp., 170 F. Supp. 2d 445, 453 (S.D.N.Y. 2001).  Therefore, Carbon's motion to dismiss the contract claim is denied.

### *As to AFC*

The contract claim against AFC, however, fails because Plaintiffs have not alleged facts sufficient to show that AFC entered into an agreement with Plaintiffs.  See Wolff v. Rare Medium Inc., 171 F. Supp. 2d 354, 358 (S.D.N.Y. 2001); Leigh Mgmt. Assocs. v. Weinstein, 251 A.D.2d 225, 226 (1st Dept. 1998).  The Court accepts for purposes of pleading that the Second Commitment Letter and Second Letter of Intent created a valid and enforceable contract, but AFC is not a party to that agreement.  Even if it were a party, there are no allegations of the material terms that AFC agreed to, including how much AFC agreed to lend to Plaintiffs or any of the repayment terms.  See

id. The only document to which AFC was a signatory is the First Letter of Intent which indicated that AFC would serve as the asset manager upon completion of the loan transaction.  Plaintiffs' bald claims that AFC breached its agreement by failing to put up collateral and serve as asset manager for alternative funding is without merit as Plaintiffs have pointed to no contractual provision requiring AFC to perform either task.  Accordingly, the breach of contract claim against AFC is dismissed.

**II.     Tortious Interference with Prospective Business Advantage**

Under New York law, to establish a prima facie case of tortious interference with prospective business advantage, a plaintiff must plead: 1) business relations with a third party; 2) defendant's interference with those business relations; 3) that defendant acted with the sole purpose of harming the plaintiff or used dishonest, unfair, or improper means; 4) injury to the relationship.  See Purgess v. Sharrock, 33 F.3d 134, 141 (2d Cir. 1994).

Plaintiffs have sufficiently pled the first and fourth elements, alleging that Defendants interfered with their business relationship with Treasures by failing to finance the proposed acquisition of the Property, causing Plaintiffs to lose out on the purchase.

As to the second element, Plaintiffs have also sufficiently pled interference.  Plaintiffs allege that they had a business relationship with Treasures, and that Defendants interfered with that relationship by causing Treasures to reject the sale of the Property.  Defendants argue that the conduct directed to Treasures is too indirect.  At this stage of the litigation process, however, this argument must be rejected.  See Brown v. AXA RE, No. 02 Civ. 10138, 2004 WL 941959, at *7 (S.D.N.Y. May 3, 2004).

Plaintiffs allege that Defendants knew that Treasures' approval of the sale of the Property was contingent on Defendants providing financing, and that Defendants made representations to Treasures concerning the waiving of pre-closing conditions to further assure Treasures that Defendants would provide financing.  When Defendants withdrew from the deal, Plaintiffs were unable to find alternative financing, and the deal with Treasures fell apart.  In a similar case in this District, the court concluded that two film producers who had negotiated with an insurance company to finance the production of their film, which caused other investors to participate in the film, had a cause of action for tortious interference against the insurance company for breaching the contract guaranteeing such financing, leading other investors to also pull out and the film to fall through.  Brown, 2004 WL 941959 at *7.

As to the third element, Plaintiffs must plead that "wrongful means" were used to induce the third party to breach the contract.  See Carvel Corp. v. Noonan, 350 F.3d 6, 17 (2d Cir. 2003).  "[W]rongful means" includes "physical violence, fraud, or misrepresentation, civil suits and criminal prosecutions, and some degrees of economic pressure."  Id. (quoting Guard-Life Corp. v. S. Parker Hardware Mfg. Corp., 50 N.Y.2d 183, 191 (1980).  Here, Plaintiffs have sufficiently alleged that Defendants misrepresented their intention to follow through with financing of the deal, despite knowing that Treasures would not complete the sale to Plaintiffs if Defendants did not intend to provide financing.  Therefore, Plaintiffs have sufficiently stated a claim for tortious interference of prospective business relations as to Carbon/BlackRock.

As to AFC, however, Plaintiffs have not alleged any facts showing that AFC interfered with any business relationships, or that AFC did so with the intent of

harming Plaintiffs or using wrongful or improper means.  Accordingly, the tortious interference claim against AFC is dismissed.

### III.     Promissory Estoppel and Equitable Estoppel

A plaintiff is not barred from pleading both a contract claim, and in the alternative, a quasi-contract or equitable estoppel claim.  See, e.g., Seiden Assoc., Inc. v. ANC Holdings, Inc., 754 F. Supp. 37, 39-40 (S.D.N.Y. 1991) (holding that pleading could allege contradictory claims for breach of contract and for recovery under theories of quantum meruit and unjust enrichment).

*Promissory Estoppel*

Plaintiffs have sufficiently stated a claim for promissory estoppel under New York law.  The Amended Complaint alleges that 1) Defendants' promise to waive most of the pre-closing loan conditions and to provide financing was clear and unambiguous; 2) Plaintiffs relied on this promise, terminated discussions with other interested lenders, and then invested over $5 million towards the Property; 3) Defendants then refused to provide financing, causing significant monetary harm to Plaintiffs.  See Esquire Radio and Elecs. v. Inc . v. Montgomery Ward & Co., 804 F.2d 787, 793 (2d Cir. 1986) (citing Restatement (Second) of Contracts § 90 (1981)).

*Equitable Estoppel*

Similarly, the Amended Complaint sufficiently alleges a prima facie equitable estoppel claim: 1) Defendants falsely represented to Plaintiffs that Carbon/BlackRock and AFC had a deal firmly in place among themselves, and that Carbon/BlackRock would waive most of the pre-closing conditions and provide financing; 2) Defendants knew that Plaintiffs would rely on those promises; 3)

11

Carbon/BlackRock and AFC did not in fact have a deal in place, and Carbon/BlackRock did not intend to provide financing; 4) in reliance on those representations, Plaintiffs terminated discussions with other interested lenders and invested over $5 million toward the Property.  See Liss Bros., Inc. v. Resnick, No. 90 Civ. 187, 1990 WL 212962 at *3-4 (S.D.N.Y. Dec. 13, 1990) (citing Special Event Ent. v. Rockefeller Ctr., Inc., 458 F. Supp. at 72, 76 (S.D.N.Y. 1978)).  Accordingly, the motion to dismiss these claims as to Carbon/BlackRock is denied.

As to AFC, however, the motion to dismiss is granted.  AFC did not make the alleged promise to provide financing or to waive the pre-closing conditions.  And although Plaintiff broadly uses the term "Defendants," it is clear from the Amended Complaint that AFC made no such promises.  Consequently, both the promissory estoppel and equitable estoppel claims against AFC fail.

**IV.     Fraud**

A plaintiff alleging fraud under New York law must allege: 1) a material false representation made by defendant; 2) defendant intended to defraud plaintiff thereby; 3) plaintiff's reasonable reliance; and 4) plaintiff's damages as a result of the reliance.  See Keywell Corp. v. Weinstein, 33 F.3d 159, 163-64 (2d Cir. 1994).  In Federal Court, Rule 9(b) requires that allegations of fraud be pled with particularity.  The complaint "must (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." Harsco Corp. v. Segui, 91 F.3d 337, 347 (2d Cir. 1996).

*Misrepresentation #1 – Intent to Provide Financing*

Plaintiffs allege two fraudulent misrepresentations.  The first is that Defendants misrepresented their intent to provide the loan as promised in the Second Commitment Letter.  This claim fails, however, because a breach of contract claim cannot be restated as a fraud claim by merely alleging that a party intentionally and falsely stated intent to perform a contract, see Bridgestone/Firestone, Inc. v. Recovery Credit Servs., Inc., 98 F.3d 13, 19-20 (2d Cir. 1996), unless, inter alia, the fraudulent misrepresentation is collateral or extraneous to the contract.  See Deerfield Comms. Corp. v. Chesebrough-Ponds, Inc., 68 N.Y.2d 954, 956 (1986).  This allegation is neither collateral nor extraneous to the contract.  Rather, this is the identical contract claim, recast as fraud.

Further, pursuant to Rule 9(b), Plaintiff is required to plead facts sufficient to show that at the time Defendants made these representations to provide financing, they did not intend to follow through with them.  Plaintiffs have failed to do so.  Their conclusory allegations, and allegations based on "information and belief" that Defendants did not intend to honor the contract are insufficient.  See, e.g., SKR Res., Inc. v. Players Sports, Inc., 938 F. Supp. 235, 238-39 (S.D.N.Y. 1996); Rubenstein v. S1 Corp., No. 04 Civ 2781, 2005 WL 743121 at *3-4 (S.D.N.Y. Mar. 31, 2005).  Therefore, the pleading is inadequate under 9(b) and accordingly the Court grants the Rule 12(b)(6) motion to dismiss.

*Misrepresentation #2 – Relationship Between Carbon/BlackRock and AFC*

The second allegation is that Defendants misrepresented the nature of the relationship between Carbon/BlackRock, and AFC.  Specifically, Plaintiffs allege that

Defendants misrepresented the relationship in an effort to induce Plaintiffs to negotiate exclusively with Defendants.  Adam Sharif initially opposed AFC's involvement in the transaction; subsequently, "in order to induce plaintiffs to proceed exclusively with Defendants and forego a choice among interested mezzanine lenders bidding on the loan," Defendants "falsely told Sharif that …Defendants regularly worked together, partnered on numerous similar transactions, and already had a deal firmly in place." (Am. Compl. ¶¶ 3-4, 28, 30-31, 108.)  Defendants also falsely assured Plaintiffs that there would be no additional fees associated with AFC's involvement.  These allegations are sufficient because, unlike the previous misrepresentation, they are collateral and extraneous to the contract.  Plaintiff's allegation is not that Defendants never intended to perform their obligations, but rather that Defendants' knowingly false representations induced Plaintiffs to enter into the contract in the first instance, which they would not have otherwise done.

Defendants contend that this claim fails the heightened pleading requirement of Rule 9(b) in that it fails to properly allege scienter.  "[S]cienter allegations give rise to a strong inference of fraudulent intent.  A plaintiff can establish this intent either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."  Kalnit v. Eichler, 264 F.3d 131, 138 (2d Cir. 2001) (internal citations and quotations omitted).  Plaintiffs have sufficiently alleged that Defendants had the motive and the opportunity to commit fraud, by inducing Plaintiff to cease negotiations with other lenders and enter an exclusive agreement with Defendants.

Defendants also argue that because Plaintiffs are sophisticated and familiar with complex, multi-million dollar real estate transactions, they could not have reasonably relied on the alleged misrepresentation.  Defendants claim that any reliance on matters not contained in the contract is unreasonable.  This conclusion is far too broad.  Courts have refused to dismiss fraud claims where, as here, plaintiffs were sophisticated businesspeople and defendants allegedly made misrepresentations about matters not embodied in the contracts.  See, e.g., Schlaifer Nance & Co., Inc. v. Estate of Andy Warhol, 90 Civ 1095, 1995 WL 66408 (S.D.N.Y. Feb. 15, 1995).

Lastly, Defendants contend that Plaintiffs have not sufficiently pled causation.  To establish causation, a plaintiff must:

> show both that defendant's misrepresentation induced plaintiff to engage in the transaction in question (transaction causation) and that the misrepresentations directly caused the loss about which plaintiff complains (loss causation).  Loss causation is the fundamental core of the common-law concept of proximate cause: An essential element of the plaintiff's cause of action for negligence, or for any tort, is that there be some reasonable connection between the act or omission of the defendant and the damage which the plaintiff has suffered.

Laub v. Faessel, 297 A.D.2d 28, 31 (2002).  Here, Plaintiffs have sufficiently alleged that Defendants induced them with false representations about their relationship with AFC into signing a contract, causing them to forego other possible financiers.  Subsequently, Defendants refused to finance the acquisition because the relationship between AFC and Carbon disintegrated.  Therefore, this fraud allegation survives as to Carbon.

It fails as to AFC, however, because Plaintiffs' damages were caused, if at all, by Carbon refusing to finance the deal.  Any connection between AFC's misrepresentation about its relationship with Carbon and the ultimate cause of the damage—Carbon refusing to finance the acquisition—is far too attenuated as to AFC.

15

See Citibank, N.A. v. K-H Corp., 968 F.2d 1489, 1496 (2d Cir. 1992) (noting that the fraud and injury "must be connected; it must appear in an appreciable sense that the damage flowed from fraud as proximate and not remote cause").

The fraud allegation as to BlackRock also fails.  Plaintiffs allege that BlackRock manages Carbon, and that they share the same principal (Alex Zabik), who acted on behalf of Carbon as president and BlackRock as a representative in the transaction.  These general allegations do not satisfy Rule 9(b)'s heightened pleading requirements.  Specifically,

> Plaintiffs' claims of agency also must comply with Rule 9(b). In a case involving multiple defendants, Rule 9(b) mandates that the complaint inform each defendant of his alleged role in the deception. Broad allegations that several defendants participated in a scheme, or conclusory assertions that one defendant controlled another, or that some defendants are guilty because of their association with others, do not inform each defendant of its role in the fraud and do not satisfy Rule 9(b). Landy v. Mitchell Petroleum Tech. Corp., 734 F. Supp. 608, 620-21 (S.D.N.Y. 1990).

Kolbeck v. LIT Am., Inc., 923 F. Supp. 557, 569 (S.D.N.Y. 1996).  Accordingly, Plaintiffs have failed to specifically allege the fraudulent conduct for which BlackRock is accountable, and the fraud claim as to BlackRock must be dismissed.

## CONCLUSION

Carbon and BlackRock's motions pursuant to Rule 12(b)(6) to dismiss the Amended Complaint's allegations (Breach of Contract (not applicable to BlackRock), Fraud, Tortious Interference, Promissory Estoppel, and Equitable Estoppel) are DENIED, except that BlackRock's motion to dismiss the fraud claim as to it is GRANTED.

AFC's motion pursuant to Rule 12(b)(6) to dismiss the Amended Complaint's allegations (Breach of Contract, Fraud, Tortious Interference, Promissory Estoppel, and Equitable Estoppel) is GRANTED. Accordingly, the Clerk of Court is ORDERED to terminate Defendant AFC from this case.

Dated: New York, New York
       March 26, 2007

SO ORDERED

PAUL A. CROTTY
United States District Judge